BURLINGTON GAS LIGHT CO. v. GREENE, THOMAS & CO.

1. **New trial**: CONFLICTING TESTIMONY. Where the testimony is conflicting and nicely balanced, the Supreme Court will not disturb the finding of the court below.

2. **Instructions**: MODIFICATION OF. It is not error to modify an instruction which, though possibly containing correct law, might, in view of the peculiar facts in the case, mislead the jury if given as asked.

3. **Contract**: COLLATERAL SECURITY: ESTOPPEL OF CREDITOR. If a creditor is positively informed by his debtor, that he will not give to him a certain promissory note as collateral security for, but *only in payment* of, his claim, and the creditor, in the face of these declarations, procures the note from an unauthorized agent of the debtor in whose possession it is, giving him a receipt therefor as collateral, he cannot afterward defeat the effect of such taking from being in payment, and insist that the transaction was void, on the ground that the act of such agent in delivering the note to him as collateral was unauthorized by the debtor.

4. **Principal and agent**: RATIFICATION. If a principal does not repudiate the unauthorized act of his agent after the same has been brought to his knowledge, but *assents* to it, this amounts to a ratification of the act, and he is bound thereby.

Burlington Gas Light Co. v. Greene, Thomas & Co.

5. —— FAILURE TO DISAFFIRM. But the mere failure on the part of the principal to disaffirm the unauthorized act of his agent, does not in itself, amount to a ratification, nor render the principal liable. There may, however, be such circumstances surrounding a principal, as that his silence may amount to an implied ratification.

*Appeal from Des Moines District Court.*

FRIDAY, JULY 5.

SUIT on a promissory note made by defendants to plaintiff. Defense, payment in the note of a third party. The plaintiff claims that such note was received as collateral only. Jury trial; verdict and judgment for defendants. The plaintiff appeals. The same cause has been once before in this court. 21 Iowa, 335.

*Strong & Smyth* for the appellant.

*Charles H. Phelps* and *Tracy & Newman* for the appellees.

COLE, J. — I. On the return of the verdict by the jury, the plaintiff moved to set the same aside, for the reason, among others, that it was contrary to the evidence. This motion was overruled, and, upon such ruling, the plaintiff assigns error. There was no error in overruling the motion on that ground. Two of the defendants testify that the plaintiff took the note of the third party in payment of the note sued upon ; while one of the plaintiff's officers and stockholders testifies to the contrary, and that such note was only received as collateral ; and another officer testifies to corroborative facts. These are all the witnesses in the case. The respective counsel, in argument, insists that there are self-contradictions or discrepancies in their opposing witnesses' testimony, tending to destroy it and make it unworthy of credit. These matters were properly before the jury, and by their finding we are concluded. In such cases of con-

flict of testimony, there is no rule of law which would justify us in interfering on the ground specified.

II. The testimony tended to show that the defendants were indebted to the plaintiff, in a considerable sum— more than the note sued on; that the note sued on was also signed by Kendall & Tallant, as *sureties;* that the defendants, who were bankers, failed or suspended payment prior to March, 1858; that plaintiff requested payment of defendants, who offered to pay in notes of others held by them, and among others exhibited a note held by them on Start & Gaddis, for over $2,000; that the plaintiff, by its president, H. B. Spelman, took said note to inquire after the solvency of the makers and as to its probable payment; that in a few days afterward the plaintiff's president called at the defendants' place of business, and there met two of the defendants' firm and their book-keeper, Field; that at this interview, as plaintiff claims, the note on Start & Gaddis was given to plaintiff as collateral, while the defendants claim that it was given in payment of the note sued upon. They agree in the fact that, after conversation about it, the defendants left, and the plaintiff took the note in their absence and gave a receipt for it, as collateral, to the defendants' book-keeper; the defendants testify that before they left, they gave plaintiff to understand that the note of Start & Gaddis would only be given in payment; that the book-keeper had no authority to make any arrangement about it, as plaintiff well knew; that Start & Gaddis afterward failed, and only paid about twenty-five cents on the dollar of their indebtedness, including the note delivered to plaintiff. The plaintiff continued to hold the note sued upon, and never surrendered it to the defendants, and defendants repudiated to their book-keeper his action in taking the receipt when informed of it; but continued to hold the receipt up to the trial. This is, of course, but

a mere outline of the testimony. It will, however, tend to show the applicability of the instructions. The only further question made in the case is as to the correctness of the action of the court, in giving, modifying and refusing certain instructions. They are very numerous and we can only examine a few in detail, and give our general views upon the questions involved.

The first instruction asked by plaintiff was as follows: "Before the jury can find that the Start & Gaddis note

*2. INSTRUC-TIONS: modification of.* was taken in satisfaction or payment of the note in suit, they must find that such was the intention and agreement of both plaintiff and defendant; and, if you believe from the evidence, that Spelman, in taking said note, did not take it in payment and did not give the defendants so to understand, then its delivery to him would not amount to the payment of the note sued on." This instruction was modified by the court as follows: "This would be true unless the condition upon which the plaintiff took the Start & Gaddis note was that plaintiff would take it in satisfaction of the note in suit. If it was taken upon such condition or terms, it would amount to a payment of the note sued on." As thus modified it was given, and to the modification the plaintiff excepted.

The defendants claim, and their testimony tended to support the claim, that the plaintiff and its president, Spelman, were given to understand that defendants would not give the note as collateral, and that plaintiff could only take it as payment of the claims held against defendants. The plaintiff denies this claim, and offered testimony tending to support such denial. Which claim is true, was a matter for the jury to find. Now, if Spelman took the note in the absence of defendants—after they had left, but " did not himself intend to take it in payment," such intention on his part would not defeat

the legal effect of his taking it, if the jury should find that, in point of fact, he knew when he took it, that he had no right to take it, *only in payment.* In other words, if the defendants left the Start & Gaddis note on their desk, within the reach or control of Spelman, with notice to him that he could not take it as collateral, but could only take it as payment, and he did thereafter take it, he cannot avoid the effect of his taking it, on the ground that "he did not intend to take it in payment and did not give the defendants so to understand." Although the, instruction, as asked, when liberally construed, was possibly correct law, yet it might have misled the jury; at all events, the modification as made by the court, presented the law of that branch or phase of the case more clearly, fully and correctly to the jury, and was not error.

The second instruction asked by the plaintiff was upon the theory that if Spelman, after defendants left, made

3. CONTRACT: collateral security: estoppel of creditor.

arrangements with Field, the book-keeper, to take the note as collateral, and Field had no authority to make such arrangement, then the transaction would be simply void, and the plaintiff would get no right by such taking, unless defendants ratified Field's acts. This was refused, and properly so, since it completely overlooked the effect of the taking as discussed under the first instruction. If he had no right to take it *only in payment,* he could not defeat the effect of his taking it by any arrangement with an unauthorized person.

The third instruction asked by plaintiff is as follows: If Field, the cashier or agent, had no authority to arrange

4. PRINCIPAL AND AGENT: ratification.

the matter with Spelman, and allow him to take the Start & Gaddis note as collateral security, yet, if the defendants, by their subsequent acts, did not repudiate the said arrangement when they heard of it, but assented to it, their subsequent conduct amounts

to a ratification of the act of Field, and is the same as if Field had authority to make the arrangement, and binds the defendants. This instruction was refused, and such refusal was error. The peculiar phraseology of the instruction must have escaped the notice of the learned judge who tried the cause in the District Court. The language is, that if the defendants " did not repudiate the said arrangement when they heard of it, *but assented to it,*" then it was a *ratification.* There can be no doubt of this proposition, that if they did not repudiate the act of their professed agent, Field, but assented to it, they are bound by the act equally as if the authority had preceded the act. The testimony upon which to base the instruction, as to the assent, was such as to require it to be given to the jury; such as the alleged conduct of defendants in relation to the compromise of the Start & Gaddis note; the allowing of plaintiff to retain possession of the note sued on; the keeping of plaintiff's receipt without objection made to them, and other matters. There was, certainly, sufficient evidence to allow the question to go to the jury upon the instruction.

The fourth instruction asked by the plaintiff is the same in theory and substance as the third, and should also have been given. The modification of the fifth was not material—it was only verbal. It, certainly, was not prejudicial to the plaintiff, nor objectionable in the eyes of the law.

The sixth was given. The seventh, eighth and ninth relate to the burden of proof, to the credibility of witnesses, and to particular facts claimed by plaintiff to have been proved, and direct the jury that they may be considered, etc. While the peculiar language of each may be vulnerable to objections, yet they severally contain, substantially, correct legal propositions, and might, with slight modifications in phraseology, have been properly given.

The tenth is upon the theory that if Field was unauthorized to contract with Spelman to take the note as collateral, that, nevertheless, the defendants were obliged to disaffirm his act, or they would be bound by it. Such is not the law. If an assumed agent has no authority to bind his alleged principal, such principal can only be bound by a ratification or adoption of the act. This ratification may be implied as well as expressed; but the principal is not bound to *disaffirm* in order to avoid liability. There may be such circumstances surrounding a principal as that his silence may amount to an implied ratification, and these defendants may be within this rule; but a principal is then bound by his ratification, and not by his want of disaffirmance. 2 Greenl. on Ev., §§ 66, 67. The tenth instruction was therefore properly refused. The eleventh is not very unlike it.

5. —— failure to disaffirm.

The modification of the twelfth was merely verbal, and neither prejudicial to plaintiff nor erroneous in law. The fourteenth is of the same class of the ninth, and what is there said, is alike applicable to the fourteenth. The fifteenth was given. This disposes of the plaintiff's instructions. We must dispose of the defendants' instructions even more summarily than of the plaintiff's. The first instruction asked by defendants was refused, but it might properly have been given. It is as follows: "If the jury believe from the evidence that plaintiff, by Spelman, their agent, received the Start & Gaddis note in satisfaction of the note sued on, they should find for the defendants." The second is like unto it, and should also have been given instead of refused.

The third embodies the same principle as the modification of plaintiff's first, and was, for the reasons stated in the discussion of that, properly given. The fourth is the same, in substance, as defendants' first, with the addition

that the retention of possession of the note by the plaintiff did not prevent its discharge. The fifth was not excepted to.

The sixth is as follows: " The receipt drawn by Field, and signed by Spelman, is not binding upon defendants' unless it was according to the agreement between Warren and Spelman, and unless Field had authority from defendants to make it."

This was given and excepted to. There should have been added to this instruction the further qualification or element, as follows: " or the defendants have since ratified his act in that matter."

Without this or the like qualification, it was error to give it.

The seventh is vulnerable to the same objection, though not quite to the same extent. Neither the eighth or ninth were excepted to. The tenth embodies the principle of law, as to silence in relation to, and ratification of, unauthorized agents' acts, as we have laid down the rule in discussing the plaintiffs' tenth instruction, and it was therefore not error to give it. The eleventh was refused. It belongs to the same class as plaintiffs' ninth, and what is said in relation to that, may be properly applied to this.

We have thus completed a review of the instructions given, modified and refused. For the error in refusing the plaintiffs' third and fourth, and in giving the defendants' sixth and seventh, the judgment of the District Court must be reversed.

We have thus far reviewed the instructions as they were asked by the parties. From this review it is apparent that the case is not a difficult one. If the plaintiffs took the Start & Gaddis note in *payment* of the note sued on, they cannot recover. If they took it as *collateral* only, and have not been guilty of laches in relation thereto, they can recover. If the defendants .

told or gave plaintiffs to understand that they could take the note only in payment, and then left, and thereupon plaintiffs refused to take it as payment, and then in good faith made an arrangement with Field, the book-keeper, to take it as collateral,—this arrangement would bind the defendants, although Field was not authorized to make it, unless defendants, upon being fully informed of what Field had done for them, expressed or manifested to plaintiffs their dissatisfaction thereof within a reasonable time.

Reversed.